## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

DANIEL DEWAYNE AIKENS                    CIVIL ACTION NO. 24-0580

VERSUS                                   JUDGE S. MAURICE HICKS, JR.

COLONIAL LIFE & ACCIDENT                 MAGISTRATE JUDGE HORNSBY
INSURANCE COMPANY

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 81) filed by Defendant and Plaintiff-in-Interpleader, Colonial Life & Accident Insurance Company ("Colonial Life"). Plaintiff, Daniel Dewayne Aikens ("Aikens"), filed two handwritten Oppositions. See Record Documents 90 and 93. Colonial Life filed Replies to each Opposition. See Record Documents 92 and 96. For the reasons explained below, the Motion for Summary Judgment is **GRANTED**, and Colonial Life is **DISMISSED** from this suit. Colonial Life has also filed a Motion for Default Judgment as to Jonathan Sanders ("Sanders") (Record Document 83). For the reasons stated below, this Motion is **DENIED AS MOOT**.

### FACTUAL BACKGROUND

This matter arises from a dispute over life insurance proceeds following the December 31, 2017, death of insured Keelien Lewis ("Lewis"). See Record Document 33-1. In November 2017, Colonial Life issued four individual term life insurance policies, each in the amount of $250,000, to four individuals associated with a lawn service business known as "Just What You Expect." See Record Document 81-1 at 10. Those individuals were Aikens, Lewis, Jason Miles ("Miles"), and Sanders. See id. Each applicant represented in his underwriting materials that he possessed a 25% ownership interest in

the business, and each policy named the business (Just What You Expect) as the beneficiary. See Record Document 81-6.

Lewis died approximately two months after his policy took effect. See Record Document 33-1. The initial death certificate reflected carbon monoxide toxicity as the cause of death but listed the manner of death as "pending investigation." See id. Colonial Life was first notified of the death in early January 2018 and thereafter corresponded extensively with Eboni Phidd ("Phidd"), who identified herself as the authorized officer and "Plan Admin" for Just What You Expect. See Record Documents 81-1 at 11 & 81-3 at 88. Phidd requested policy copies and initiated the early stages of the claim process. See Record Documents 81-3 at 87–89. Colonial Life advised Phidd on multiple occasions that it required both a completed claim form and a final death certificate before it could complete its review. See id. at 17–26. When no documentation was received for more than a year, Colonial Life placed the matter in inactive status on July 2, 2019. See id. at 17. In September 2019, attorney Wayne Webb ("Webb") notified Colonial Life that he represented Aikens in connection with the claim and asserted that Aikens was the owner of Just What You Expect under an assumed-name registration he filed in Grant Parish in 2015. See Record Document 81-3 at 39, 85–86.

Following these events, Colonial Life became aware that Aikens had been charged with several federal crimes and that publicly available news articles indicated he was a suspect in Lewis's death. See Record Document 81-1 at 14–15. The final death certificate later submitted by the decedent's mother lists the manner of death as homicide. See Record Document 65-1.

Aikens filed this civil action on May 1, 2024, asserting that Colonial Life violated the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to pay him $1,500,000, which he alleged to be three times the face value of the policy. See Record Document 1 at 4. Aikens did not identify a legal basis supporting this request. On December 10, 2024, Colonial Life filed a Counterclaim and Third-Party Complaint-in-Interpleader (Record Document 33), naming Aikens, Miles, Sanders, and the decedent's mother as competing claimants. The Court granted Colonial Life's request to deposit the policy proceeds into the registry, and Colonial Life deposited the full $250,000 on January 8, 2025. See Record Document 35. On February 14, 2025, Aikens filed an Amended Complaint alleging damages in the amount of $35,547,976. See Record Document 59 at 6. However, the Amended Complaint does not mention the $1,500,000 from the Original Complaint at all. See id. Rather, it reframes the lawsuit as an ERISA document request case, claiming Colonial Life failed to provide various plan documents in 2018 and 2019. See id. at 4–6.

Colonial Life now seeks summary judgment dismissing it from this action as a disinterested stakeholder. See Record Document 81. Aikens opposes, asserting that Colonial Life is an ERISA plan administrator that owes him millions of dollars in statutory penalties for failing to provide documents. See Record Documents 90 & 93. Colonial Life filed two replies, arguing that it is not a plan administrator, that ERISA does not apply, and that interpleader remains proper. See Record Documents 92 & 96.

Colonial Life also seeks a Default Judgment against Third-Party Defendant-in-Interpleader Sanders. See Record Document 83. The Motion for Default Judgment requests that Sanders be barred from claiming any death benefits under Lewis's policy

because he has not timely responded to the lawsuit. See Record Document 83-1. To date, Sanders has not filed an answer.

## LAW AND ANALYSIS

### I.      Summary of the Arguments

Colonial Life argues in its Motion for Summary Judgment that it faces competing claims to the policy proceeds because the beneficiary, Just What You Expect, was represented in the underwriting materials as a business jointly owned by four individuals. See Record Document 81-1 at 15. However, Aikens now claims sole ownership based on an assumed-name filing submitted years earlier. See id. Further, Colonial Life notes that Aikens may be disqualified from receiving benefits under Louisiana's slayer statute if he participated in Lewis's homicide. See id.; see also La. R.S. § 22:901. Colonial Life therefore contends that interpleader is appropriate and that it has satisfied all obligations by depositing the full policy amount into the registry. See Record Document 81-1 at 18–20.

Aikens' first Opposition argues that Colonial Life "firmly established" itself as the ERISA Plan Administrator through its conduct in this litigation and through its handling of claim forms and communications. Record Document 90 at 2. Colonial Life responds in its first Reply that the Fifth Circuit has expressly rejected the "de facto plan administrator" doctrine and holds that an insurer administering claims cannot be deemed a plan administrator absent an express designation in the governing plan documents. See Record Document 92 at 2 (citing Connecticut Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC, 878 F. 3d 478, 486 (5th Cir. 2017)).

Aikens' second Opposition argues that Colonial Life is the Plan Administrator because it exercised full control over the plan. See Record Document 93 at 3–4. Colonial Life's second Reply argues that Aikens has failed to satisfy the threshold requirement of establishing the existence of an ERISA plan. See Record Document 96 at 2. Colonial Life also contends that even if it had discretionary authority over the plan, that would not make Colonial Life the Plan Administrator. See id. at 5.

## II.    Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In applying this standard, the court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart Louisiana, L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id. If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 323). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational trier of fact to find for the non-moving party ...." Id.

### III.    Analysis

#### a.    Interpleader

The Court must first determine whether interpleader was properly sought in this matter. Interpleader exists "to protect a stakeholder from the possibility of multiple claims on a single fund." Rhoades v. Casey, 196 F.3d 592, 600 n.8 (5th Cir. 1999). At the first stage of an interpleader action, the court must consider whether the party seeking interpleader faces multiple competing claims by adverse parties to a single, definite fund. See id. at 600. Once it is determined that interpleader has been properly brought, the court then determines the respective rights of the claimants. See id.

Here, the Court must first consider whether there are competing claims. The evidence demonstrates that Colonial Life faces real and substantial competing claims. The listed beneficiary, "Just What You Expect," appears in the underwriting records as a business equally owned by four individuals, each holding 25% ownership. See Record Document 81-6. In contrast, Aikens now claims he has always been the sole owner, relying on a 2015 assumed-name filing in Grant Parish. See Record Document 81-3 at 39. This discrepancy alone is sufficient to create competing claims to the fund.

Another fact that opens the door to competing claims is that the final death certificate lists Lewis's manner of death as homicide, and the record reflects that Aikens has been publicly linked to the circumstances surrounding Lewis's death. See Record

Documents 65-1 & Record Document 81-8. If Aikens is ultimately determined to have participated in Lewis's killing, Louisiana's slayer statute would disqualify him from receiving the proceeds. See La. R.S. § 22:901. These facts satisfy the requirement that the stakeholder be exposed to adverse claims from multiple potential beneficiaries.

Second, the Court must determine whether the $250,000 that Colonial Life deposited into the Court's registry (representing the amount of Lewis's policy) is a single, definite fund for interpleader purposes. See Record Document 35. Although Aikens demanded $1,500,000 in his original Complaint, he did not identify any statute or theory supporting that figure, nor did he tie it to ERISA or any other remedial provision. See Record Document 1. His Amended Complaint later asserts more than $35 million in damages under various ERISA provisions, but even those assertions cannot enlarge the $250,000 fund unless ERISA applies and Colonial Life is in fact an ERISA plan administrator subject to the statutory penalties cited by Aikens in his Amended Complaint. See Record Document 59.

Interpleader is appropriate only if Colonial Life's maximum potential liability is limited to a single, definite sum. Whether Colonial Life's exposure could, even theoretically, exceed $250,000 turns entirely on (1) whether the policy at issue is governed by ERISA, and, if so, (2) whether Colonial Life qualifies as the Plan Administrator under ERISA and may be subject to document-production penalties under 29 U.S.C. § 1132(c). Only if both questions are answered in the affirmative could ERISA penalties expand Colonial Life's potential liability beyond the $250,000. Accordingly, the Court now addresses these issues.

b.  Whether the Policy is Governed by ERISA

The burden of establishing the existence of an ERISA plan rests with the plaintiff. To determine whether an ERISA plan exists, the Fifth Circuit uses the following framework:

> First, the court examines the safe-harbor provisions of the U.S. Department of Labor regulations to determine whether the program is exempt from ERISA. Under the regulations, all four of the following criteria must be met for exemption: (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer, and (4) the employer received no profit from the plan. Second, the court must determine whether there is a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Finally, the court asks whether the employer established or maintained the plan for the purpose of providing benefits to its employees. In determining whether an ERISA plan exists, the court must focus on the employer and its involvement with the plan.

Provident Life and Accident Ins. Co. v. Sharpless, 253 F. Supp. 2d 874, 877–78 (M.D. La. 2003), aff'd sub nom. Provident Life & Acc. Ins. Co. v. Sharpless, 364 F.3d 634 (5th Cir. 2004) (internal citations omitted).

Aikens has produced no evidence satisfying these requirements. The record contains no evidence that any employer ever established, maintained, or administered an ERISA-regulated employee welfare benefit plan. Instead, the record shows a set of four individual life insurance policies purchased in November 2017, each naming the business "Just What You Expect" as beneficiary and each listing its respective insured as a 25% owner of that same business. See Record Document 81-7. Aikens's assertions that ERISA governs the dispute without any evidentiary support are insufficient to prove that an ERISA plan exists.

Moreover, the third requirement, that the employer establish or maintain the plan for the purpose of providing benefits to its employees, is not satisfied under any version of the ownership structure presented in the record. See Sharpless, 253 F. Supp. 2d at 877–78. If Aikens were, as he now contends, the sole owner of Just What You Expect, then Lewis would have been his employee. In that scenario, the record reflects that the policy at issue was for the benefit of the business, not for the benefit of Lewis as an employee. Similarly, if the business was owned equally by four individuals (Aikens, Lewis, Miles, and Sanders) then Lewis was not an employee for whom the employer established an ERISA plan, but rather one of several business owners who, along with the others, purchased individual policies naming the business as the beneficiary. Under either set of facts, there is no evidence that any "employer" established or maintained a benefit plan for its "employees," as ERISA requires. See id. Accordingly, the Court finds that Aikens has failed to establish that the policy at issue is governed by ERISA.

   c.   Whether Colonial Life is a Plan Administrator

Even assuming, arguendo, that Aikens had established the existence of an ERISA-governed plan, the summary judgment record contains no evidence that Colonial Life was the plan administrator for purposes of ERISA's penalty provisions. ERISA defines a "plan administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). If no administrator is designated, "the plan sponsor" serves as the administrator. § 1002(16)(A)(ii). Here, the only documents in the record suggesting that a plan administrator was ever designated would be when Phidd stated that she was the plan administrator. See Record Document 81-3 at 88. However, there is no evidence that the insureds completed any documentation

designating Phidd as the plan administrator. Thus, the plan did not have a designated plan administrator, so it would be the plan sponsor.

Section 1002(B)(i)–(iii) defines the "plan sponsor" as:

(i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan, or (iv) in the case of a pooled employer plan, the pooled plan provider.

Under these definitions, the plan sponsor in this case (if an ERISA plan existed at all) would be the employer that established or maintained the alleged plan. As discussed above, the record contains no evidence that any employer created an employee welfare benefit plan or that any such plan existed. The only entity that could conceivably qualify as an employer for purposes of § 1002(16)(B) would be Just What You Expect, but that entity's ownership and organizational structure are disputed. The underwriting materials identify four equal co-owners, but Aikens now claims sole ownership. Under either version of events, Colonial Life is plainly not the plan sponsor and therefore cannot be the default plan administrator under § 1002(16)(A)(ii).

Aikens argues that Colonial Life should be considered the plan administrator because it communicated with him, reviewed claim materials, and filed pleadings in this case. See Record Documents 90 and 93. However, these activities are processing functions that do not transform an insurer into a plan administrator under ERISA. The Fifth Circuit has made clear that insurers do not become ERISA plan administrators merely because they process claims, correspond with insureds, or exercise discretionary authority over benefit determinations. In N. Cypress Medical Center Operating Co. v.

10

<u>Aetna Life Insurance Co.</u>, the Fifth Circuit stated that it "does not recognize a de facto administrator doctrine in the context of an insurance company involved in claims handling." 898 F.3d 461, 483 (5th Cir. 2018). Based on the record, even if the plan was governed by ERISA, Colonial Life was not the plan administrator.

      d.  <u>Dismissal of Colonial Life</u>

Because the Court has found that interpleader was properly invoked, that the plan is not governed by ERISA, and that Colonial Life is not the plan administrator, that means Colonial Life's maximum exposure under the policy is limited to the $250,000 that was already deposited into the Court's registry. <u>See</u> Record Document 35. Therefore, all claims by Aikens against Colonial Life regarding any penalties or funds outside of the $250,000 already deposited are **DISMISSED**.

Colonial Life has demonstrated that it faces competing claims to the policy proceeds, has deposited the entirety of the single, definite fund into the registry, and has no remaining interest in the outcome of the dispute among the competing claimants. Therefore, Colonial Life is **DISMISSED** from this action.

      e.  <u>Motion for Default Judgment against Jonathan Sanders</u>

Colonial Life seeks a default judgment against Sanders solely to eliminate him as a potential competing claimant to the policy proceeds, and it does not seek any damages or affirmative relief against him. <u>See</u> Record Document 83. A default judgment in Colonial Life's favor would only bar Sanders from asserting a claim to the interpleaded funds. Because the Court has dismissed Colonial Life from this litigation as a disinterested stakeholder, there is no need to adjudicate its request for default judgment. Accordingly, Colonial Life's Motion for Default Judgment (Record Document 83) is **DENIED AS MOOT**.

**CONCLUSION**

Based on the reasons explained above, Colonial Life's Motion for Summary Judgment (Record Document 81) is **GRANTED** and all claims asserted by Aikens against Colonial Life are **DISMISSED WITH PREJUDICE.** Colonial Life is **DISCHARGED** as a disinterested stakeholder and **DISMISSED WITH PREJUDICE** from this action. Colonial Life's Motion for Default Judgment as to Sanders (Record Document 83) is **DENIED AS MOOT**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 11th day of December, 2025.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE